UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANWAR IQBAL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) No. 09 C 1382 |
| v. | ) |
| | ) Senior U. S. District Court Judge |
| B&R OIL COMPANY, INC., | ) George W. Lindberg |
| | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

On March 4, 2009, plaintiff Anwar Iqbal filed a complaint against defendant B&R Oil Company, Inc., seeking money damages and an injunction based on defendant's purported violations of the parties' marketing agreement. Plaintiff alleged breach of contract (count I), breach of the implied covenant of good faith and fair dealing (count II), violation of the Petroleum Marketing Practices Act (count III), and violation of the Uniform Deceptive Trade Practices Act (count IV). Plaintiff subsequently withdrew count IV of the complaint. Defendant moved to dismiss plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). For the reasons set forth below, defendant's motion is granted in part and denied in part.

On May 28, 2006, plaintiff and British Petroleum ("BP") entered into a four-year Commission Marketer Agreement (the "CMA") and a concurrent four-year Commission Marketer Lease Agreement (the "Lease"). Under the Lease and CMA, plaintiff operated a BP service station and sold motor fuel on behalf of and at prices set by BP. Plaintiff received a commission of $.12 for each gallon of gasoline sold.

In the summer of 2008, defendant acquired several service stations owned by BP,

including the service station operated by plaintiff. As part of the acquisition, defendant assumed BP's contractual rights and obligations under the CMA and the Lease. Plaintiff alleged that, in November 2008, defendant entered into a contract with a third-party to sell the service station operated by plaintiff for $1,050,000. Plaintiff further alleged that this price included the value of her business, measured by the total gasoline sold at the location.

According to plaintiff, defendant then offered her the option to purchase the service station for $1,050,000. Plaintiff alleged that defendant threatened to terminate the CMA and the Lease if plaintiff did not accept. Plaintiff rejected defendant's offer on the grounds that the purchase price included the value of her business and that defendant could not force her to pay for her own business. On January 22, 2009, defendant informed plaintiff by letter that it was exercising its rights under the CMA and the Lease and terminating both agreements, effective April 22, 2009. The letter also provided plaintiff with the option to become a lessee-dealer under defendant's form lease. Plaintiff claimed that the option to become a lessee-dealer was made in bad faith because the proposed lease increased rent from $1,637 per month to $8,750 per month.

Plaintiff alleged that defendant threatened to stop supplying gasoline unless plaintiff raised the price of motor fuel 16 to 18 cents above neighboring competitors. Plaintiff claimed that these price increases were designed to force plaintiff to purchase the station on defendant's terms. Plaintiff complied with defendant's price increases and experienced a sharp decline in business. Plaintiff also alleged that representatives of defendant harassed her and demanded that she either purchase the service station or abandon the business.

On February 19, 2009, defendant terminated the CMA and the Lease and, on February 25,

2009, stopped supplying gasoline to plaintiff's service station. Plaintiff filed suit against defendant. On plaintiff's motion for a temporary restraining order and preliminary injunction, United States District Court Judge Rebecca Pallmeyer determined that the 90-day termination notice issued on January 22, 2009, was valid, but ordered defendant to supply gasoline to plaintiff until April 22, 2009. Plaintiff filed a motion for reconsideration. On April 22, 2009, plaintiff's motion for reconsideration was denied and plaintiff was ordered to vacate and turn over the premises at issue to defendant.

Plaintiff's obligation to provide the grounds for entitlement to relief in a complaint requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, plaintiff's factual allegations must be sufficient to raise a right to relief above the speculative level. *Id.* To survive a motion to dismiss, a complaint must allege sufficient facts to state a claim for relief that is plausible on its face. *Id.* at 570. When considering a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), this court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

In count I, plaintiff alleges a breach of contract claim. To state a claim for breach of contract, plaintiff must allege that: (1) a contract existed between the parties; (2) plaintiff performed her contractual obligation; (3) defendant breached the contract; and (4) plaintiff suffered damages as a result of defendant's breach. *Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 64 F. Supp. 2d 741, 745 (N.D. Ill. 1999). Plaintiff alleged that the CMA defined the parties

contractual rights and obligations, that plaintiff fully performed her obligations under the CMA, that defendant breached the CMA in several respects, and that plaintiff's business suffered as a result of defendant's breach. Plaintiff identified five different grounds for breach of contract: defendant breached the CMA by terminating and withdrawing from commissioner marketer operations without offering plaintiff a viable option to become a lessee-dealer; defendant breached the CMA by forcing plaintiff to price gasoline 16 to 18 cents above the nearest competitor; defendant breached the CMA by terminating it on February 19, 2009, "without any notice period"; defendant breached the CMA and the Lease on February 19, 2009, by terminating both without justification; and defendant breached the CMA by failing to supply plaintiff with motor fuel after February 25, 2009. Accepting these allegations as true and making all reasonable inferences in plaintiff's favor, plaintiff states a breach of contract claim that is plausible on its face.

Defendant argues that the CMA does not require a lessee-dealer option that is viable or affordable. Under Illinois law, every contract contains an implied promise of good faith and fair dealing between the contracting parties. *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 395 (7th Cir. 2003). This covenant requires a party vested with broad discretion to act reasonably and not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties. *Id.* Under the terms of the CMA, defendant had broad discretion to withdraw from commission marketer operations, set retail prices for motor fuel, and offer plaintiff the option to become a lessee-dealer on defendant's then current forms. Defendant was therefore obligated to act reasonably and not arbitrarily or in a manner inconsistent with the

4

reasonable expectation of plaintiff when exercising this authority. When construing all reasonable inferences in plaintiff's favor, the allegations in the complaint plausibly suggest that defendant breached its obligation to act in good faith. *See Cobbs v. Sheahan*, 385 F. Supp. 2d 731, 734 (N.D. Ill. 2005) (a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case).

Defendant also argues that the breach in count I based on exorbitant retail prices and interruption of fuel deliveries is moot. Defendant concedes, however, that plaintiff may have a damage claim for the period between February 25, 2009, and March 5, 2009. This time period, at the very least, provides plaintiffs a legally cognizable interest in the outcome of the proceeding and therefore plaintiff's breach of contract claim based on exorbitant prices and interruption of deliveries is not moot. *See Evers v. Astrue*, 536 F.3d 651, 662 (7th Cir. 2008).

In count II, plaintiff alleges that defendant breached an implied duty of good faith. Under Illinois law, every contract contains an implied covenant of good faith and fair dealing between the contracting parties. *Cromeens, Holloman, Sibert, Inc.*, 349 F.3d at 395. However, the covenant of good faith and fair dealing is a rule of construction rather than an independent source of duties for the parties to a contract. *In re Kmart Corp.*, 434 F.3d 536, 542 (7th Cir. 2006); *Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prods., Inc.*, 212 F.3d 373, 381 (7th Cir. 2000). Plaintiff's claim for breach of the implied covenant of good faith and fair dealing merely recites the allegations contained in a separate breach of contract claim. Since Illinois law precludes separate claims for breach of the implied covenant of good faith and fair dealing, count II of the complaint is dismissed. *See Codest Engineering v. Hyatt Int'l Corp.*, 954

F. Supp. 1224, 1233 (N.D. Ill. 1996); *Banco del Estado v. Navistar Int'l Transp. Corp.*, 942 F. Supp. 1176, 1182 (N.D. Ill. 1996).

In count III, plaintiff alleges that defendant violated the Petroleum Marketing Practices Act ("PMPA"). The PMPA prohibits the termination or nonrenewal of a franchise unless that termination or nonrenewal is based on the permissible reasons set forth in Section 2802 and given in compliance with the procedural notice requirements set forth in Section 2804. 15 U.S.C. §§ 2802, 2804. However, the PMPA applies only to a franchise between a refiner and a distributor, a refiner and a retailer, a distributor and another distributor, and a distributor and a retailer. 15 U.S.C. § 2801(1)(A). Unless both parties meet the statutory definition of a "refiner," "distributor," or "retailer," the PMPA does not apply. *Farm Stores, Inc. v. Texaco, Inc.* 763 F.2d 1335, 1339-40 (11th Cir. 1985). Whether a person is a "retailer," "distributor," or "refiner" is a question of law. *Id.* at 1342. Both the plain language of the statute and the relationship between the parties as set forth in the CMA guide this court's inquiry. *See id.* at 1340; *Karak v. Bursaw Oil Corp.*, 147 F. Supp. 2d 9, 13 (D. Mass. 2001).

Plaintiff does not meet the definition of "refiner" since she does not refine crude oil. *See* 15 U.S.C. § 2801(5). The PMPA defines a "retailer" as "any person who purchases motor fuel for sale to the general public for ultimate consumption." 15 U.S.C. § 2801(7). The PMPA defines a "distributor" as any person who: (1) "purchases motor fuel for sale, consignment, or distribution to another"; or (2) "receives motor fuel on consignment for consignment or distribution to his own motor fuel accounts or to accounts of his supplier, but shall not include a person who is an employee of, or merely serves as a common carrier providing transportation

09 C 1382

service for, such supplier." 15 U.S.C. § 2801(6).

The CMA states, in relevant part, that:

> BP hereby engages Marketer as an independent contractor and Marketer agrees to act as an independent contractor to dispense motor fuels at the Fuel Facility in the name and on behalf of BP and furnish services related thereto in accordance with the terms of this Agreement. BP shall supply or arrange for the supply of all motor fuels for sale at the Fuel Facility and shall provide and install all equipment necessary for the dispensing of motor fuels. *All inventories of motor fuels shall be owned by BP and shall be dispensed by Marketer on behalf of BP at retail prices established by BP.*
>
> . . . .
>
> Market shall promptly pay BP in the manner and at the times established by BP for all gross receipts from the sale of motor fuels. *All sales proceeds and accounts receivable arising from the sale of all motor fuels shall at all times be and remain the property of BP.*

(Emphasis added). Thus, plaintiff merely dispenses motor fuel on behalf of defendant who retains title, ownership, and risk of loss of the motor fuel. Plaintiff therefore does not purchase motor fuel and so is not a "retailer." *See Farm Stores, Inc.* 763 F.2d at 1340 (holding that the plaintiff was not a purchaser of gasoline since the plaintiff did not pay for the gasoline inventory until it was sold, take title, pay ad valorem taxes on the gasoline inventory, bear the risk of loss of the gasoline, retain any funds from the sale of the gasoline to motorists, set the price or assume the market risk in fluctuations in gasoline prices, pay sales taxes or extend credit to motorists on resale, or hold a gasoline retailers business license); *Karak*, 147 F. Supp 2d at 14-15 (holding that the plaintiffs who merely received a commission of $.09 per gallon of motor fuel sold did not purchase motor fuel).

The CMA also provides that:

> MARKETER ACKNOWLEDGES AND AGREES THAT THIS AGREEMENT DOES NOT CREATE, EXTEND, OR RENEW A FRANCHISE UNDER ANY LOCAL, STATE OR FEDERAL LAW, INCLUDING BUT NOT LIMITED TO THE FEDERAL PETROLEUM MARKETING PRACTICES ACT.

(Emphasis in original). While this provision is not dispositive, it evinces the parties' understanding that no franchise relationship was created and that the agreement was not governed by the PMPA.

Plaintiff's alternative argument under the PMPA is that she was a "distributor." Since plaintiff did not purchase motor fuel, she does not fall within the first definition of "distributor." *See* 15 U.S.C. § 2801(6)(A); *Miller v. W.H. Bristow, Inc.*, 739 F. Supp. 1044, 1048 (D.S.C. 1990). Plaintiff also does not fall within the second definition of "distributor" since that definition involves consignment which applies only to wholesale operations. *Farm Stores, Inc.*, 763 F.2d at 1341; *Miller*, 739 F. Supp. at 1048-49; *see* 15 U.S.C. § 2801(6)(B). "The legislative history makes clear that in defining a 'distributor' who operates under a consignment Congress had in mind an independent middleman acting as a jobber, not a dealer selling to the public at retail." *Farm Stores, Inc.*, 763 F.2d at 1341 (quoting *Johnson v. Mobil Oil Corp.*, 553 F. Supp. 195, 198 (S.D.N.Y. 1982)). Plaintiff therefore was not a "distributor." Since plaintiff does not meet the statutory definition of a "retailer," "distributor," or "refiner," the PMPA does not apply. Accordingly, count III of the complaint is dismissed.

09 C 1382

ORDERED: Defendant B&R Oil Company, Inc.'s motion to dismiss plaintiff Anwar Iqbal's complaint for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6) [27] is granted in part and denied in part. Counts II and III are dismissed. The motion is denied as to Count I.

ENTER:

GEORGE W. LINDBERG
Senior U.S. District Judge

DATED: October 27, 2009